## NICHOLAS TRANSIT CO. v. PITTSBURGH S. S. CO.

(Circuit Court of Appeals, Second Circuit. November 11, 1913.)

No. 24.

COLLISION (§ 95*)—STEAM VESSELS MEETING—SHEER.

A collision between the steamship Glidden, passing down through the St. Clair Flats Ship Canal, which at that point is 294 feet wide, and the Magna, passing up in tow of the steamship Empire City, *held* not due to any fault on the part of the Empire City or her tow, but solely to the sheering of the Glidden from some unknown cause, which took her across into the eastern side of the channel, where she narrowly missed the Empire City and struck the Magna.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree of the District Court, Western District of New York, which held that no fault was proved on the part of either the Empire City or Magna, both owned by respondent, contributing to a collision of the last named vessel with the Glidden. The collision occurred in the St. Clair Flats Ship Canal on the morning of October 9, 1903; the Glidden was bound down, the Empire City with the Magna in tow was bound up. The opinion of the District Judge will be found in 196 Fed. 60.

H. D. Goulder and F. S. Masten, both of Cleveland, Ohio, for appellant.

H. A. Kelley and Hoyt, Dustin, Kelley, McKeehan & Andrews, all of Cleveland, Ohio, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The locality, the signals, and movements of the vessels and the respective contentions of the parties are so fully set forth in Judge Hazel's opinion that it is unnecessary to restate them here.

A controlling factor in the determination of the controversy is the place of collision. Was it east or west of the middle of the channel? in the Magna's water or in the Glidden's? That it was east of mid-channel we are entirely satisfied. The channel was 294 feet wide. To the easterly bank was made fast the bow of a pile-driver, which projected out into the stream 70 feet to 75 feet. It is not disputed that the towing vessel, Empire City, and the Glidden passed each other about off the stern of the pile-driver. Two witnesses apparently entirely disinterested, although one of them at least seemed from the manner in which he gave his testimony to be quite friendly to the libelant, testified on its behalf as to this passing. They were standing on the pile-driver, one at the bow and the other at the stern, watching the ap-

proaching Empire City, which was evidently about to pass the pile-driver so closely that unless she were carefully steered she might collide with it. One of them testified that the Empire City passed the pile-driver at a distance of 20 feet; the other put it at 18 to 20 feet. Each of them, however, a day or so after the accident, which happened over two years before he testified, upon being questioned as to this same distance, gave it as 8 to 10 feet, and signed a written statement to that effect.

It is frequently said that estimates of distance on the water are rarely, if ever, accurate, which is true enough as to such distances as 100 yards, or 175 feet, or two lengths, or a quarter mile. But when a person who is standing on solid ground, or its equivalent, sees a vessel pass him as close as the Empire City did, his estimate of distance cannot be much out of the way in total feet, even though his percentage of error may be high. The testimony of those on the Empire City puts the distance at about 10 feet, and we feel sure that the distance was not more than 15 feet; it may be assumed, however, to be 20 feet. These three figures, 75, 20, and 48, aggregate 143, and this method of determining the location of the Empire City seems much more satisfactory than deductions as to actual location at the time of passing, drawn from prior positions and courses which are themselves in dispute. The line of mid-channel was 147 feet from the east dyke.

It is a fact, accepted by both sides, that as the bow of the Glidden passed the stern of the Empire City the Glidden was on a sheer eastward, that sheer continued till she struck the Magna, the Glidden's master admitting that the broadest part of her sheer, 1½ to 2 points, was at the moment of impact. Her master says she cleared the stern of the Empire City by about 25 or 30 feet; the helmsman makes it 35 feet. The towing hawser to the Magna was 600 feet. Passing the stern of the Empire City at so short a distance and with such a sheer, and the position of the Empire City being as stated above, we see no escape from the conclusion that the Glidden must have been well within the east half of the channel by the time she struck the Magna.

That being so, it becomes unnecessary to decide some of the other controversies in the case. Whether the initial sheer of the Glidden— her "dropping off," as her master calls it—was overcome or not, the following facts are established by her own proofs: While the Empire City was still some ways below her, the Gidden was near the west dyke —40 feet at the bow, 25 feet at the stern, her master says. When her bow got so near the stern of the Empire City as to feel any effects of the suction, she was much nearer to the latter's course. That she got over there by some movement for which the Empire City was in no way responsible we do not doubt. If her bow was 40 feet from the west dyke, we find nothing in the testimony in this case, nor in any authority, which would justify the conclusion that the suction at the Empire City's stern, which would operate only when the stern came nearly opposite to the Glidden's bow, could draw that bow 100 feet across the west side of the channel. The master of the Empire City

was entitled to assume that the Glidden's course would remain where he saw it near the west dyke (not hugging it) until the vessels passed, and that it would not be altered so as to bring her within the reach of his own boat's suction. It makes no difference in this suit whether the Glidden came over to the eastward through her master's error in navigation, or because she was a bad steerer, or because of inevitable accident; if the cause be not one for which the Empire City is responsible, she cannot be held to blame. Nor can the Magna, which was struck, as we have seen, in her own water.

The decree is affirmed, with costs.